**Vera N. SELLERS, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Fireman's Fund Insurance Company, Defendants.**

**Civ. A. No. 2479.**

United States District Court,
S. D. Georgia,
Savannah Division.

July 1, 1970.

Alton D. Kitchings, Savannah, Ga., for plaintiff.

Perry Brannen, Sr., Frank P. Brannen, Savannah, Ga., for Fireman's Fund Ins. Co.

Luhr G. C. Beckmann, Savannah, Ga., for State Farm Mut. Auto. Ins. Co.

## ORDER

LAWRENCE, Chief Judge.

The basic question underlying these motions to dismiss the complaint is whether plaintiff's failure to exhaust her remedies in respect to the suspension of her driver's license, under the Motor Vehicle Safety Responsibility law, bars the action brought against the defendants for damages caused by their refusal to certify to the Director that plaintiff was covered at the time of the accident by liability insurance.[1] When the Department of Public Safety notified Mrs. Sellers that her license and registration certificate were suspended, she did not demand a hearing[2] and did not appeal from the Director's action to the superior court. See Ga.Code § 92A–602. The defendants contend that since she did not exhaust her remedies under the Act she has no right or standing to sue them for what she alleges to be their wrongful failure to certify that there was coverage under the respective liability insurance policies as to the vehicle and driver involved.

I disagree with defendants' theory.

The situation here is not at all like that in Adler v. Chicago & Southern Airline, Inc., D.C., 41 F.Supp. 366 and Agostino v. Homer Coal Corp., D.C., 114 F.Supp. 861; affirmed 220 F.2d 438, 15 Alaska 500. The rationale of *Adler* is that when the legislature creates a board or administrative agency with power to regulate matters in a particular field the courts are without jurisdiction to grant relief to any aggrieved person until he has exhausted his administrative remedies if the act or omission is within the sphere of the regulatory powers of the agency concerned.

Under Georgia law the Director has jurisdiction over the suspension of licenses where no security is furnished following an accident and where no liability insurance covers the vehicle involved or the operator. In such a case the failure to exhaust administrative remedies or to appeal to the superior court is fatal to any action for relief by the aggrieved person in regard to the license brought in another court. Waller v. Conner, Director, 218 Ga. 633, 129 S.E.2d 845.

But here Mrs. Sellers is not seeking review of the decision of the Director. She is not trying to get her license back. She is trying to get damages from the defendants for causing her to lose it. The two are entirely different things.

---

1. State Farm carried the insurance on the vehicle driven by Mrs. Sellers which struck and injured a minor. Fireman's Fund insured Mrs. Sellers (unless the exclusionary clause applied) under the non-owner automobile provision of the policy covering the Sellers car which was not involved in the accident. State Farm had also issued a liability policy to the father of the injured minor. It settled the claim for $3,403.55 in January, 1968, under the uninsured motorist provision of the father's policy.

2. According to plaintiff's brief, such a request was made.

The defendants were not parties to the proceeding for suspension of the license and the Director was without power to bind them by any decision as to coverage. Under the Draconian law the Director was compelled to take away Mrs. Sellers' license.[3] She is not complaining thereof in this litigation. What she is complaining of is that the insurers wrongfully refused to file the SR–21 form certifying that the company had issued an automobile liability policy to the assured with limits at least equal to the financial responsibility laws and that the policy "was in effect on the date of the above described accident." The defendants cannot profit by what Mrs. Sellers did not do in a matter which primarily concerned *her*.

In passing I will note that the Act creates a dilemma for a liability insurer which maintains that coverage in the particular case is excluded by the policy. As a matter of custom rather than of statutory requirement insurance companies fill out the SR–21 forms and send them to the Director. If this amounts to certifying coverage, the insurer's position in any subsequent litigation is prejudiced.[4] On the other hand, if it erroneously fails to certify coverage and the insured loses his license, the insurer runs the risk of a suit for damages.

■ It is arguable that Mrs. Sellers could have escaped her dilemma (thereby relieving the insurers of theirs) by furnishing security "sufficient in the judgment of the director to satisfy any judgments for damages or injuries resulting from the accident as may be recovered against the operator or owner * *." Ga.Code § 92A–605(a). However, Mrs. Sellers did not do so. She has been without a driver's license since March,

1969. And so we have a suit in which one of the questions a jury will have to determine is whether and to what extent her decision to stand on her rights affects any recovery.

Before reaching that issue the jury will have to find from the evidence that when Mrs. Sellers drove the automobile of a friend to the latter's place of employment where she was dropped and then proceeded toward Mr. Sellers' service station in order for the car to be "serviced" the friend's motor vehicle was *not* being used by plaintiff in the "automobile business." If so used, coverage is apparently excluded by both policies. The decision in Redd v. Brisbon, 113 Ga. App. 23, 147 S.E.2d 15, which plaintiff's counsel emphasizes, while relevant is not determinative of that question.

Should the exclusionary clause be inapplicable, then, even if Fireman's Fund had no statutory duty to certify coverage, the jury will be confronted with the question of whether the company should have withdrawn the certification after it had filed the SR–21 form. Whether there was any legal duty by State Farm to file the form and acknowledge coverage after demand therefor by a person to whom the protection of its liability policy extended presents a question which I shall leave open until the evidence is in.

The Court treats the respective motions to dismiss as motions for summary judgment pursuant to F.R.Civ.P., Rule 12 (b) (6). Each is overruled. It is unnecessary for me to pass at this time upon the questions raised during the argument as to primary and secondary coverage. They can be dealt with later.

3. As the brief of plaintiff puts it: "All the owner or operator can do is exactly what Mrs. Sellers did and that is to inform the director that the operator or owner has a policy of insurance. If the insurance company denies coverage under the terms of the policy, however, frivolous and unfounded, the director has no jurisdiction to determine any such issue and can do nothing except what the law compels him to do in the absence of such filing and that is to suspend the license as directed by the statute."

4. In the present case the record shows that Fireman's Fund did not file SR–21 "for our assured since the form was so loosely worded that it could be construed to interpret [*sic*] that we afforded coverage for this particular accident."

It is noted in going through the file that no orders were taken in connection with certain motions to strike that were argued before me. My recollection is that I overruled the motion concerning the prayer for punitive damages and sustained one of the motions to strike certain alleged inflammatory matter in the complaint, namely the allegation about "multi-million dollar corporations squabbling among themselves." I herewith formalize my oral rulings in these respects.